1  TO: JUDGE ALEX KOZINSKI

2      UNITED STATES COURT OF APPEALS

3      FOR THE NINTH CIRCUIT

4      95 SEVENTH STREET

5      SAN FRANCISCO, CALIFORNIA 94103

6

7                              IN LINE WITH BACA V. ADAMS

8  RE: LAWRENCE SIMMONS          NO: 13-56132 (JANUARY 16, 2015)

9      J59855 (A5-122)

10     LOS ANGELES COUNTY STATE PRISON

11     P.O. BOX 4430

12     LANCASTER, CALIFORNIA 93539

13

14     DEAR JUDGE KOZINSKI: PEACE BE UNTO YOU IN "JESUS" NAME! I

15 READ YOU AND OTHER NINTH CIRCUIT JUDGES WERE FED-UP WITH ATTORNEY

16 GENERALS AND PROSECUTORS WHO LIED AND PUT ON FALSE PERJURED TESTI-

17 MONIES TO CONVICT PEOPLE. WHEN YOU STATED ON WEB "WHAT WILL IT TAKE TO

18 PRODUCE HONEST AND ETHICAL CONDUCT FROM OUR STATE AND FEDERAL PROSE-

19 CUTORS, THE NINTH CIRCUIT SUGGESTION WAS A PERJURY PROSECUTION WILL DO

20 IT." WELL I AGREE WITH YOU AND STATE THAT "GOD" IN THE NAME OF "JESUS"

21 CHOSE YOU IN THIS HOUR TO REPRESENT HONESTY AND INTEGERITY.

22     MY CASE IS FILLED WITH PROSECUTORS LIES, SUPPRESSION OF EVIDENCE,

23 POLICE OFFICERS KNOWINGLY AND WILLINGLY PERJURED TESTIMONIES, THAT I

24 THOUGHT YOU WOULD BE INTERESTED TO KNOW. I'VE ATTACHED GROUND ONE ONLY

25 WHICH I'M PURSUING ON HABEAS CORPUS IN THE CALIFORNIA SUPREME COURT

26 AT 350 MCALLISTER STREET IN SAN FRANCISCO, CALIFORNIA. GROUND (1) IS "NEW

27 EVIDENCE" THAT WAS SUPPRESSED DURING TRIAL DISCOVERED THROUGH 1054.9 IN

28 2013 AND 2014. IN ORDER TO CONVICT ME AS ALLEGED AIDER & ABETTOR PROSECU-

Court Paper

Printed on

Recycled Paper

1  TION TOLD THE JURY IN 1994 THAT CODEFENDANT NAMED NICHOLS KILLED THE VICTIM

2  IN THIS CRIME WITH A 380 AUTOMATIC PISTOL THAT FIRED "COPPER BULLET FRAGMENTS"

3  PROSECUTION ENTERED INTO EVIDENCE A "COPPER BULLET FRAGMENT" WHICH HE

4  KNEW WAS FALSE EVIDENCE, BECAUSE AUTOPSY EXAMINER AT EXHIBIT (2) STATED

5  THE BULLET HE EXTRACTED FROM THE VICTIMS BRAIN WAS A "LEAD BULLET FRAGMENT,"

6  THE AUTOPSY EXAMINER STATED IN THAT REPORT THAT HE GAVE DETECTIVES ZAVALA

7  AND DESOTO THE "LEAD BULLET FRAGMENT AS EVIDENCE" BUT THEY WITH PROSE-

8  CUTION DECIDED TO SWITCH THE BULLET BECAUSE THEY KNEW CODEFENDANT GUN

9  FIRED "COPPER BULLET FRAGMENTS".

10  FOR (20) YEARS I'VE BEEN CONVICTED WRONGFULLY ALONG WITH CODEFENDANT

11  NICHOLS WHO WAS COERCED TO TESTIFY THAT I WAS THE THIRD UNIDENTIFIED ROB-

12  BER IN THE SKI-MASK EVEN THOUGH MY HAND PRINTS DIDN'T MATCH THE UNIDEN-

13  TIFIED ROBBER IN THE SKI-MASK HAND PRINT, CODEFENDANT NICHOLS PLEADED GUILTY

14  BECAUSE HE AS WELL AS I WAS UNDER THE IMPRESSION THAT HE ACCIDENTALLY

15  KILLED THE VICTIM, THE OTHER CODEFENDANT RECIEVED A DEAL ALSO, NICHOLS RE-

16  CIEVED 25 PLUS 5 YEARS, ELLIOT RECIEVED (20) YEARS, I RECIEVED LIFE WITHOUT

17  PAROLE PLUS 25 YEARS TO LIFE AND 11 YEARS ENHANCEMENT, PROSECUTION KNEW

18  FOR 20 YEARS THAT THE CLERK OF THE STORE WHO FIRED A 38 REVOLVER KILLED THE

19  VICTIM AND ALL POLICE OFFICERS INVOLVED IN THIS CRIME KNEW THE SAME,

20  I'M JUST SENDING MY HABEAS CORPUS TO THE CALIFORNIA SUPREME COURT

21  AND IT IS MY HOPE IN "JESUS" NAME YOU AS A RIGHTEOUS JUDGE WILL CALL THEM

22  AND INTERVENE TO HELP VACATE MY CONVICTION. I'M NOW 63 YEARS OLD, I'VE SUF-

23  FERED THESE 20 YEARS WRONGFULLY AND IN PROSECUTING PROSECUTORS IF YOU NEED

24  MY CASE TESTIMONY I'LL GIVE IT. THANK YOU IN "JESUS" NAME FOR LISTENING.

25                                                    SINCERELY YOURS,

26  DATED: 2ND DAY OF MARCH          2015          /S/ Lawrence Simmons

27  PS: I'VE HIGHLIGHTED IN "EXHIBITS WHERE THE ERRORS ARE TO BE COMPARED TO

28  THE FACTS.

1  MR. LAWRENCE SIMMONS
2  J59855 (A5-122)
3  LOS ANGELES COUNTY STATE PRISON
4  P.O. BOX 4430
5  LANCASTER, CALIFORNIA 93539
6
7
8            IN THE CALIFORNIA SUPREME COURT
9              FOR THE STATE OF CALIFORNIA
10
11  LAWRENCE SIMMONS            CASE NO:
12       PETITIONER,            REQUESTING BY MOTION FOR THIS COURT TO
13       VS.                    TAKE JUDICIAL NOTICE OF LOWER APPEALS
14  PEOPLE OF THE STATE OF      COURT DENIAL IN CLEAR VIOLATION OF CALIF-
15  CALIFORNIA                  ORNIA RULES OF COURT RULE 4.551 (G) ET AL:
16       RESPONDENT.
17      PETITIONER HEREIN REQUEST BY MOTION FOR THIS COURT TO TAKE JUDICIAL NOTICE
18  OF LOWER COURTS DENIAL IN VIOLATION OF CALIFORNIA RULES OF COURT RULE 4.551 (G)
19  ET AL; CALIFORNIA RULES OF COURT RULE 4.551 (G) STATES "IF A COURT CHOOSES TO DENY
20  A PETITION IT MUST EXPLAIN THE REASONS FOR THE DENIAL. AN ORDER THAT MERELY
21  STATES THAT THE PETITION IS DENIED IS NOT ENOUGH TO SATISFY THE RULE."
22      PETITIONER HEREIN "DISCOVERED NEW EVIDENCE" IN DISCOVERY PETITION PUR-
23  SUANT TO PENAL CODE 1054.9 (A-D) FROM MARCH 2013 TO SEPTEMBER 25, 2014
24  THAT PROSECUTION SUPPRESSED DURING TRIAL THAT WAS SUBSTANTIALLY MATERIAL
25  THAT WOULD HAVE PROVEN THAT CODEFENDANT NICHOLS NEVER KILLED THE VICTIM IN THIS
26  CASE AS ALLEGED AND BECAUSE PETITIONER WAS ALLEGED TO BE AN AIDER AND
27  ABETTOR NO JUROR WOULD HAVE CONVICTED PETITIONER OF THIS CRIME. (SEE:
28  GROUND ONE ON HABEAS CORPUS)

Court Paper
Printed on

Recycled Paper

1

1    PETITIONER HEREIN SATISFIED THE SCHLUP V. DELO 115 S. CT. 851 AND MURRAY V.

2    CARRIER STANDARD THAT A HABEAS PETITIONER MUST SHOW THAT A CONSTITUTIONAL

3    VIOLATION HAS PROBABLY RESULTED IN THE CONVICTION OF ONE WHO IS NOT GUILTY OF

4    MURDER AS ALLEGED. THIS NEW EVIDENCE SHOWS CRUCIAL "BRADY VIOLATIONS"

5    DURING TRIAL AND OPENED A GATEWAY BY CLEAR CONVINCING EVIDENCE UNDER

6    28 U.S.C. SECTION 2244 (b)(2)(B)(II). (MUNCHINSKI V. WILSON (2012) 694 F.3d 308)

7    PETITIONER HEREIN ALSO SATISFIED "AEDPA ACT OF 1996, PUB. L. NO. 104-132, 110

8    STAT. 1214 (1996)" STANDARD WHICH REQUIRES CLAIMS BASED ON NEW EVIDENCE BE

9    FILED WITHIN ONE YEAR OF THE DISCOVERY OF THAT EVIDENCE".

10    PETITIONER HEREIN AFTER DISCOVERY PURSUANT TO PENAL CODE 1054.9 FILED

11    HIS HABEAS PETITION ON OCTOBER 1, 2014 WHICH WAS ONLY SIX DAYS. CLAIMS ON

12    HABEAS CORPUS THAT IS SUCCESSIVE PETITIONER HAS SHOWN AS MEETING THE EXCEPT-

13    ION FOR FUNDAMENTAL MISCARRIAGES OF JUSTICE UNDER CARRIER 477 U.S. AT 495;

14    KUHLMANN V. WILSON 477 U.S. 436, 106 S. CT. 2679; SMITH V. MURRAY 477 U.S. 527

15    CLAIM (5) PEOPLE V. CHIU (2014) 59 CAL. 4th 155 CITING IN RE HANSEN 2014 CAL. APP.

16    LEXIS 591, 22-23 (CAL. APP 4th DIST. JULY 1, 2014 IS TO BE APPLIED RETROACTIVELY.

17    THE LOWER COURT BY JUST CITING CASES WITH DENIAL HAS NOT FULFILLED THE

18    CALIFORNIA RULES OF COURT RULE 4.551 (G) MANDATE. PETITIONER HEREIN HAS SHOWN

19    BEING WRONGFULLY CONVICTED AND SUFFICIENT REASONS WHY THE COURT SHOULD HAVE

20    REVIEWED THE MERITS AND SHOULD HAVE ORDERED AN EVIDENTIARY HEARING OR VA-

21    CATED THE CONVICTION. PETITIONER HEREIN PRAYS THIS COURT WILL TAKE JUDICIAL NO-

22    TICE OF THESE FACTS AND ORDER AN EVIDENTIARY HEARING OR VACATE THIS CONVICTION.

23    PETITIONER SO PRAYS IN "JESUS" NAME!

24    DATED: 2ND DAY OF MARCH, 2015                    /S/ Lawrence Simmons

25

26

27

28

Court Paper

Printed on

Recycled Paper

1  MR. LAWRENCE SIMMONS

2  J59855 (A5-122)

3  LOS ANGELES COUNTY STATE PRISON

4  P.O. BOX 4430

5  LANCASTER, CALIFORNIA 93539

6

7

8  IN THE SUPREME COURT OF CALIFORNIA

9  FOR THE STATE OF CALIFORNIA

10

| | |
|---|---|
| 11  LAWRENCE SIMMONS | CASE NO: |
| 12  PETITIONER, | MOTION IN SUPPORT OF HABERS CORPUS AND RE- |
| 13  VS. | MAND FOR EVIDENTIARY HEARING BASED ON |
| 14  PEOPLE OF THE STATE OF | GROUNDS (1,4,5,6) ON HABERS CORPUS; |
| 15  CALIFORNIA | |
| 16  RESPONDENT. | |

17  A). PETITIONER ON HABEAS CORPUS STATES AT GROUND (1) ON HABEAS CORPUS

18  THAT FROM MARCH 2013 TO SEPTEMBER 25, 2014 HE PURSUED "DISCOVERY PUR-

19  SUANT TO PENAL CODE 1054-9 (A-D)" AND DISCOVERED NEW EVIDENCE THAT PRO-

20  SECUTION HAD KNOWINGLY AND WILLINGLY SUPPRESSED DURING TRIAL, PROSECUTIONS

21  EVIDENCE OF A "COPPER BULLET FRAGMENT" HE ADMITTED INTO EVIDENCE BEFORE

22  THE JURY STATING THAT BULLET KILLED THE VICTIM WAS A LIE AND PERJURY AS THE

23  NEW EVIDENCE REVEALS THE VICTIM WAS KILLED BY A "LEAD BULLET FRAGMENT".

24  CODEFENDANTS GUN FIRED "COPPER BULLET FRAGMENTS", THE CLERK OF THE STORE

25  GUN FIRED "LEAD BULLET FRAGMENTS". UNQUESTIONABLY THIS NEW EVIDENCE

26  PROVES THAT CODEFENDANT NICHOLS NEVER KILLED THE VICTIM AS ALLEGED. EVERY

27  POLICE OFFICER DURING TRIAL KNOWINGLY AND WILLINGLY PURSURED THEMSELF BY

28  SAYING THE VICTIM WAS KILLED BY A "COPPER BULLET FRAGMENT WHEN THEY KNEW

Court Paper

Printed on

Recycled Paper

1.

1. HE WAS KILLED BY A "LEAD BULLET FRAGMENT." (SEE: GROUND (1) ON HABEAS CORPUS
2. AND EXHIBITS SPECIFIED):
3. B) PETITIONER STATES THAT GROUND (4) "DELIBERATE DESTRUCTION OF MATERIAL
4. AND BIOLOGICAL EVIDENCE WITHOUT NOTICE" IS "NEW EVIDENCE" ALSO OBTAINED
5. IN DISCOVERY ON PENAL CODE 1054:9. THE SURVEILLANCE TAPE OF THE ATTEMPTED
6. ROBBERY MURDER WAS DESTROYED WITHOUT NOTICE AND SO WAS THE BLOOD,
7. SHOES, SHIRTS, etc. THAT WAS IMPACTED WITH BLOOD WAS DESTROYED WITHOUT NOTICE.
8. (SEE: PENAL CODE 1417:7, 1417:9 (A-C)
9. C) GROUND (5) IS CONSIDERED "NEW LAW THAT IS TO BE RETROACTIVELY
10. APPLIED" IN PEOPLE V. CHIU (2014) 59 CAL. 4TH 155. CHIU HELD THAT NO ONE MAY
11. BE CONVICTED OF FIRST DEGREE PREMEDITATED MURDER UNDER A "NATURAL AND
12. PROBABLE CONSEQUENCE THEORY". PETITIONER HEREIN WAS CONVICTED UNDER SUCH
13. THEORY.
14. D) PETITIONER SAYS BECAUSE HE WAS SENTENCED TO LIFE WITHOUT POSSIBILITY
15. OF PAROLE THE TRIAL COURT WAS IN ERROR EXCEEDING ITS JURISDICTION WHEN
16. IT IMPOSED A RESTITUTION FINE. THE SENTENCE HAS TO BE CORRECTED.
17. ___WHY AN EVIDENTIARY HEARING SHOULD BE HELD:___
18. ___PEOPLE V. HEDGECOCK (1990) 51 C.3d 395, 414, 872 CR. 803. HELD THE COURT___
19. MAY GRANT AN EVIDENTIARY HEARING WHEN THERE ARE MATERIAL DISPUTED IS-
20. SUES OF FACT. CALIFORNIA RULES OF COURT 4.551 (F) STATES THAT AN EVIDENTIARY
21. HEARING IN A STATE HABEAS CASE IS REQUIRED ONLY IF THE COURT FINDS THAT THE
22. CASE DEPENDS ON THE RESOLUTION OF AN ISSUE OF FACT.
23. ___HEREIN PETITIONER HAS ALLEGED AS DETERMINATIVE FACT AT GROUND (1) NEW___
24. EVIDENCE PROVES THAT THE VICTIM WAS NOT KILLED BY CODEFENDANT BULLET A COPPER
25. BULLET FRAGMENT BUT WAS KILLED BY A "LEAD BULLET FRAGMENT" FIRED BY THE
26. CLERK OF THE STORE. (SEE EXHIBIT (2) AUTOPSY REPORT) ALSO EVIDENTIARY IS REQUIRED
27. AS GROUND (4) SHOWS DELIBERATE DESTRUCTION OF MATERIAL EVIDENCE WITHOUT NO-
28. TICE VIOLATES DUE PROCESS. BECAUSE GROUND (5)(6) REQUIRES RESENTENCING,

Court Paper
Printed on
Recycled Paper

2.

1  AN EVIDENTIARY HEARING IS REQUIRED TO DETERMINE THE FACTS. IF THERE IS ENOUGH
2  EVIDENCE FOR A RETRIAL OR TO VACATE THE CONVICTION. PETITIONER SAYS FOR THE
3  REASONS STATED HEREIN HE BELIEVES THIS COURT IS REQUIRED BY LAW TO REMAND
4  FOR EVIDENTIARY HEARING OR VACATE THE CONVICTION BASED ON "NEW EVIDENCE"
5  THAT HE AS ALLEGED AIDER AND ABEITOR CANNOT SUFFER CONVICTION OF FELONY
6  MURDER WHERE EVIDENCE SHOWS CODEFENDANT NEVER KILLED THE VICTIM IN THIS
7  CASE. PETITIONER SO PRAYS IN "JESUS" NAME.
8  DATED: 2ND DAY OF MARCH , 2015               /S/ Laurence Simmons

3.

MC–275

Name: *MR. LAWRENCE SIMMONS*

Address: *LOS ANGELES COUNTY STATE PRISON*

*P.O. BOX 4430*

*LANCASTER, CALIFORNIA 93539*

CDC or ID Number: *J59855 (A5-122)*

*IN THE SUPREME COURT*

*FOR THE STATE OF CALIFORNIA*

(Court)

PETITION FOR WRIT OF HABEAS CORPUS

*Lawrence Simmons*
Petitioner

vs.

*PEOPLE OF THE STATE OF CALIFORNIA*
Respondent

No. _____

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal and you are an attorney, file the original and 4 copies of the petition and, if separately bound, 1 set of any supporting documents (unless the court orders otherwise by local rule or in a specific case). If you are filing this petition in the Court of Appeal and you are *not* represented by an attorney, file the original and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2007). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2010]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov

**This petition concerns:**

☑ A conviction ☐ Parole

☑ A sentence ☐ Credits

☐ Jail or prison conditions ☐ Prison discipline

☐ Other *(specify):* _____

1. Your name: *LAWRENCE SIMMONS*

2. Where are you incarcerated? *LANCASTER STATE PRISON*

3. Why are you in custody? ☑ Criminal conviction ☐ Civil commitment

*Answer items a through i to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

*(1) FIRST DEGREE MURDER SPECIAL CIRCUMSTANCE; (2) ATTEMPTED MURDER; (3) ATTEMPTED ROBBERY*

b. Penal or other code sections: *P.C. 187 AND P.C. 190.2 (a)(17); P.C. 664/187; P.C. 664/211*

c. Name and location of sentencing or committing court: *SUPERIOR COURT OF FRESNO, 1100 VAN NESS AVENUE, FRESNO, CALIFORNIA 93721*

d. Case number: *580777-4*

e. Date convicted or committed: *MARCH 22, 1995*

f. Date sentenced: *April 21, 1995*

g. Length of sentence: *LIFE WITHOUT PAROLE*

h. When do you expect to be released? *WHEN JUSTICE & DUE PROCESS IS RIGHTLY MEASURED.*

i. Were you represented by counsel in the trial court? ☑ Yes ☐ No *If yes, state the attorney's name and address:*

_____

_____

4. What was the LAST plea you entered? *(Check one)*:

☑ Not guilty ☐ Guilty ☐ Nolo contendere ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

☑ Jury ☐ Judge without a jury ☐ Submitted on transcript ☐ Awaiting trial

MC-275

6. GROUNDS FOR RELIEF
**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

PETITIONER ASSERTS THAT "NEW EVIDENCE" OBTAINED IN DISCOVERY ON 1054.9 SHOWS PRO-
SECUTION SUPPRESSED FAVORABLE MATERIAL EVIDENCE, ALSO PROSECUTION ENTERED KNOW-
INGLY FALSE EVIDENCE TO THE JURY AND ALLOWED POLICE OFFICERS TO TESTIFY FALSELY TO
CONVICT PETITIONER WHICH DENIED HIS 5TH AND 14TH AMENDMENT RIGHT TO DUE PROCESS:

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

PETITIONER SAYS HE PURSUED PENAL CODE 1054.9 DISCOVERY OF RECORDS HE WAS ENTITLED TO FROM
MARCH, 2013 TO SEPTEMBER 25, 2014 AND RECIEVED INVESTIGATIVE REPORTS OF "NEW EVIDENCE"
AS CITED HEREIN WHICH SHOWS AND PROVES HE'S NOT GUILTY. PETITIONER AFTER ENDING DISCOVERY
DILIGENTLY PURSUED "HABEAS CORPUS ON OCTOBER 1, 2014 TO SUPERIOR COURT", ALSO PETITIONER
RECIEVED "NEW EVIDENCE" OF INFORMATION THAT ALL BIOLOGICAL EVIDENCE AND VIDEO SURVEILLANCE
TAPE RECORDING WAS DESTROYED WITHOUT NOTICE. DISCOVERING "NEW EVIDENCE" PETITIONER HAS
COMPLIED WITH "AEDPA ACT OF 1996, PUB. L. NO. 104-132, 110 STAT 1214 (1996) WHICH REQUIRES
THAT CLAIMS BASED ON "NEWLY DISCOVERED EVIDENCE BE FILED WITHIN ONE YEAR OF THE DISCO-
VERY OF THAT EVIDENCE." ON SEPTEMBER 14, 1994 THREE SUSPECTS ENTERED THE FAL LIQUORE STORE
AND ATTEMPTED TO ROB THE STORE, TWO WERE IDENTIFIED AS THOMAS NICHOLS AND STEVE ELLIOT,
THE THIRD SUSPECT WORE A SKI-MASK AND COULD NOT BE IDENTIFIED BUT WAS ALLEGED TO BE PETI-
TIONER. EVENTS WENT WRONG, THE STORE CLERK DREW A 38 REVOLVER AND COMMENCED FIRING AT
THE ROBBERS, SUSPECT NICHOLS THE ONLY SUSPECT WITH A GUN FIRED BACK WITH A 380 AUTOMATIC.
(CONTINUED ON ATTACHED PAGES (1 AND 2)

b. Supporting cases, rules, or other authority (underline) (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

THE U.S. CONSTITUTION 5TH AMENDMENT SAYS NO PERSON SHALL BE DEPRIVED OF LIFE, LIBERTY
OR PROPERTY WITHOUT DUE PROCESS OF LAW NOR DENIED EQUAL PROTECTION OF THE LAWS; THE US.
CONSTITUTION 14TH AMENDMENT HOLDS NO PERSON SHALL BE DEPRIVED OF LIFE, LIBERTY OR PROP-
ERTY WITHOUT DUE PROCESS NOR DENIED EQUAL PROTECTION OF THE LAWS;
CONTINUED ON ATTACHED PAGES (3-4)

PETITION FOR WRIT OF HABEAS CORPUS

GROUND (1)(A) SUPPORTING FACTS CONTINUED:

ACCORDING TO THE EVIDENCE "ALL THREE SUSPECTS" WERE HIT BY THE BULLETS" FIRED BY THE STORE CLERK, ALSO A BY-STANDER (CUSTOMER) IN THE STORE WAS ACCIDENTALLY STRUCK BY A BULLET AND KILLED. EXHIBIT (6)(A) DURING TRIAL THE "VIDEO SURVEILLANCE TAPE" SHOWED TWO OF THE ROBBERS IDENTIFIED AS NICHOLS AND ELLIOT WERE NOT WEARING ANY MASKS, ONLY THE THIRD ROBBER ALLEGED TO BE PETITIONER WORE A SKI-MASK. WHILE ESCAPING FROM THE STORE THE THIRD ROBBER IN THE SKI-MASK WITH "NO GLOVES ON HELD THE GLASS DOOR WHEREIN HIS HAND PRINT WAS RECOVERED BY EXPERT TECHNICIANS", DURING TRIAL THE PROSECUTIONS EXPERT ON PRINTS TESTIFIED THAT THE "HAND PRINT OF THE THIRD ROBBER DID NOT MATCH PETITIONERS PRINTS". CRIT. 1452-1454) ALSO PROSECUTIONS EXPERT TESTIFIED THAT THE THREE SUSPECTS LEFT "THREE CLEAR BLOOD TRAILS AWAY FROM THE STORE AND NONE OF THE BLOOD IN ALL THREE TRAILS MATCHED THAT OF PETITIONER" AND IT WAS SHOWN BY EVIDENCE THAT PETITIONER "DID NOT HAVE ANY INJURIES OF BEING SHOT TO CONNECT HIM TO THIS CRIME".

IT WAS DETERMINED BY EXPERT TECHNICIANS AND INVESTIGATIVE OFFICERS THAT SUSPECT NICHOLS GUN A 380 AUTOMATIC FIRED "COPPER BULLET FRAGMENTS" (SEE: NEW EVIDENCE EXHIBIT (1)(A) PAGE 2 OF 4; (NEW EVIDENCE EXHIBIT (1)(B) PAGE 5 OF 7 BY DETECTIVE ZAVALA); (NEW EVIDENCE EXHIBIT (1)(C) PAGE 1 OF 2 & 2 OF 2 BY DETECTIVE DESOTO; (NEW EVIDENCE EXHIBIT (1)(D) FRESNO POLICE DEPARTMENT PROPERTY EVIDENCE REPORT).

NEW EVIDENCE OF THE "AUTOPSY REPORT EXHIBIT (2) PAGE(8) AT PROSECTIVE BY DOCTOR VENU GOPAL" SHOWS THAT HE EXTRACTED FROM THE VICTIMS RIGHT FRONTAL LOBES OF HIS BRAIN A MEDIUM CALIBER "LEAD BULLET FRAGMENT", THIS LEAD BULLET FRAGMENT WAS TURNED OVER TO INVESTIGATIVE DETECTIVES DESOTO AND ZAVALA. THIS NEW EVIDENCE OF THE "AUTOPSY REPORT AND EXHIBIT (1)(D) FRESNO POLICE DEPARTMENT PROPERTY EVIDENCE REPORT WAS NEVER INTRODUCED DURING TRIAL OR EVEN MADE KNOWN, AND WAS NEVER PART OF PROSECUTIONS LIST OF EXHIBITS DURING TRIAL. (SEE: EXHIBIT (3)) PROSECUTION KNOWINGLY SUPPRESSED THIS EVIDENCE OF THE "AUTOPSY REPORT AND FRESNO POLICE DEPARTMENT PROPERTY EVIDENCE REPORT, WHICH WAS FAVORABLE MATERIAL EVIDENCE WHICH WOULD HAVE PROVEN AND SHOWN THAT SUSPECT NICHOLS GUN THE 380 AUTOMATIC "DID NOT KILL THE VICTIM AS ALLEGED". THE AUTOPSY REPORT STATED A "LEAD BULLET FRAGMENT KILLED THE VICTIM THAT WAS REMOVED FROM HIS BRAIN AND EXHIBIT (1)(D) AT ITEM (1A) SHOWS "TWO LEAD BULLETS FRAGMENT FROM THE SOUTH WEST CORNER OF THE STORE WAS FOUND. THIS SHOWS AND MEANS THAT THE CLERK WHO FIRED A 38 REVOLVER AT THE THREE SUSPECTS KILLED THE VICTIM IN THIS CRIME AS EXHIBIT (1)(D) AT ITEM (8) SHOWS A "COPPER BULLET FRAGMENT" WAS FOUND AND NUMBERED STAND (3). STAND (3) IS CLEARLY REVEALED BY EXHIBIT (1)(A) PAGE 2 OF 4 AND (1)(B) PAGE 5 OF 7 AS BEING A "COPPER BULLET FRAGMENT" LYING ON THE LIQUOR SHELF BEHIND THE COUNTER WHERE THE CLERK WAS WHICH WAS FIRED BY SUSPECT NICHOLS.

PROSECUTION KNOWINGLY ENTERED FALSE EVIDENCE BEFORE THE JURY OF A "COPPER BULLET FRAGMENT" AS EXHIBIT #35 DURING TRIAL WHICH HE CLAIMED KILLED THE VICTIM. (SEE: EXHIBIT (3)(A) RT. 777-778) PROSECUTION KNEW THE "AUTOPSY REPORT STATED THAT DR. GOPAL TURNED OVER TO DETECTIVES DESOTO AND ZAVALA A "LEAD BULLET FRAGMENT HE STATED KILLED THE VICTIM. YET PROSECUTION KNOWINGLY ALLOWED POLICE OFFICERS TO TESTIFY FALSELY THAT THE VICTIM WAS KILLED BY A "COPPER BULLET FRAGMENT FIRED FROM SUSPECT NICHOLS 380 AUTOMATIC". (SEE: EXHIBIT (3)(B) RT. 87, 38 OF DETECTIVE STOKES)

1.

Ground (1)(A) Supporting Facts Continued:

Prosecution knowingly suppressed favorable material evidence of the autopsy report and exhibit (1)(1) police property evidence report which would prove that the "lead bullet fragment" taken from the victims brain was fired by the clerks 38 revolver not suspect Nichols 380 automatic. Had the jury recieved that evidence no reasonable juror would have convicted the petitioner and codefendants of this crime. The evidence of the autopsy report and exhibit (1)(1) proves suspect Nichols did not kill the victim and petitioner is not guilty of murder as an aider & abettor. Because trial evidence did not support petitioner as being a suspect in the events of the attempted robbery murder, prosecutions desire to convict petitioner led to an unlawful, prohibited coerced plea bargin when suspect Nichols was offered a promise or deal of lenniency if he would testify and say that petitioner was the third unknown robber in the ski-mask, even though the "handprint of the robber in the ski-mask did not match petitioners prints", crit. 1452-1454) the coerced plea bargin violated statutory that was totally overlooked to permit this conviction, thus denying petitioner his 5th and 14th amendment right to due process and equal protection.

Ground (1)(B) Supporting Cases Continued:

Petitioner asserts that no more than affidavits is necessary to make the prima facia case. United States v. Kiss 658 F.2d 526, 536 (7th Cir. 1981) cert. denied 50 U.S.L.W. 2169, S.Ct. (March 22, 1982) newly discovered evidence must be supported by declarations or affidavits. People v. Trusillo (1977) 67 Ca.3d 547, 557, 136 Cr. 672 defendant must show reasonable dilligence in newly discovered evidence (see: attached affidavit to petition and Ground (1) facts) People v. Mesila 57 Ca.3d 574, 129 Cr. 192 held the fundamental due process principle is that prosecution may not deprive an accussed of the opportunity to present material evidence which might prove his case.

David Joseph Munchinski v. Harry Wilson (Warden) (3rd Cir. 2012) 694 F.3d 308 held the U.S. district court western district of Pennsylvania granted prisoners second or successive habers petition. The prosecutors had committed multiple Brady violations during prisoners murder trial, and this opened a gateway by clear convincing evidence under 28 U.S.C. sect. 2244(b)(2)(B)(ii). Munchinski discovered a report of seargeant George Frayuk's interview of Richard Bowen between February 20, 2003 and March 10, 2003, the court concluded that Munchinski asserted the claims within sixty days of its discovery. Thus all claims are timely.

Brady v. Maryland 373 U.S. 83, 83 S.Ct. 1194 held after conviction of murder in the first degree committed in the course of robbery, petitioner had been sentenced to death and learned of an extrajudicial confession of his accomplice who was tried separately who admitted the actual homicide, the confession had been suppressed by the prosecution. The U.S. supreme court held that prosecutions suppression of the accomplice confession violated the due process clause of the 14th amendment. Petitioner moved the trial court for a new trial based on the newly discovered evidence that had been suppressed by the prosecution. The United States supreme court agreed with

2.

GROUND (1)(B) SUPPORTING CASES CONTINUED:

THE APPEAL COURT THAT SUPPRESSION OF THE CONFESSION WAS A VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT, THE COURT OF APPEALS RELIED ON U.S. EX REL. ALMEDIA V. BALDI 195 F.2d 815, 33 A.L.R. 2d 1407; U.S. EX REL. THOMPSON V. DYE 221 F.2d 763 WHICH THE U.S. SUPREME COURT STATES THE CORRECT CONSTITUTIONAL RULE. THE RULING WAS AN EXTENSION OF MOONEY V. HOLOHAN 294 U.S. 103, 112, 55 S.Ct. 340 THE COURT RULED ON WHAT NONDISCLOSURE BY A PROSECUTOR VIOLATES DUE PROCESS. IT IS A REQUIREMENT THAT CANNOT BE DEEMED TO BE SATISFIED BY MERE NOTICE AND HEARING IF A STATE HAS CONTRIVED A CONVICTION THROUGH THE PRETENSE OF A TRIAL WHICH IN TRUTH IS BUT USED AS A MEANS OF DEPRIVING DEFENDANT OF LIBERTY THROUGH DELIBERATE DECEPTION OF COURT AND JURY BY THE PRESENTATION OF TESTIMONY KNOWN TO BE PERJURED, SUCH A CONTRIVANCE BY A STATE TO PROCURE THE CONVICTION AND IMPRISONMENT OF A DEFENDANT IS AS INCONSISTENT WITH THE RUDIMENTARY DEMANDS OF JUSTICE AS IS THE OBTAINING OF A LIKE RESULT BY INTIMIDATION.

IN SCHLUP V. DELO (1995) 115 S.Ct. 851, 513 U.S. 298 HELD MURRAY V. CARRIER 477 U.S. AT 496, 106 S.Ct. STANDARD REQUIRES THE HABEAS PETITIONER TO SHOW THAT A CONSTITUTIONAL VIOLATION HAS PROBABLY RESULTED IN THE CONVICTION OF ONE WHO IS ACTUALLY INNOCENT. TO ESTABLISH THE REQUISITE PROBABILITY THE PETITIONER MUST SHOW THAT IT IS MORE LIKELY THAN NOT THAT NO REASONABLE JUROR WOULD HAVE CONVICTED HIM IN THE LIGHT OF THE NEW EVIDENCE. THE PETITIONER THUS IS REQUIRED TO MAKE A STRONGER SHOWING THAN THAT NEEDED TO ESTABLISH PREJUDICE. TO SATISFY THE CARRIER GATEWAY STANDARD A PETITIONER MUST SHOW THAT IT IS MORE LIKELY THAN NOT THAT NO REASONABLE JUROR WOULD HAVE FOUND PETITIONER GUILTY BEYOND A REASONABLE DOUBT.

PETITIONER BELIEVES HE HAS MADE A PRIMA FACIA SHOWING THAT IS REQUIRED BY SUPPORTING AFFI-DAVIT. UNITED STATES V. KIS 658 F.2d 526, 536; PEOPLE V. TRUJILLO 67 CA.3d. 547, 557, 136 CR. 618. (SEE: ATTACHED AFFIDAVIT) PETITIONER PURSUED DISCOVERY ON 1054.9 FROM MARCH 3, 2013 TO SEPTEMBER 25, 2014 AND DILLIGENTLY FILED PETITION FOR WRIT OF HABEAS ON OCTOBER 1, 2014 AFTER DISCOVERING "NEW EVIDENCE" AS CITED HEREIN. PETITIONER HAS COMPLIED WITH AEDPA ACT OF 1996, PUB.L. NO. 104-132, 110 STAT. 1214 (1996) WHICH REQUIRES THAT CLAIMS BASED ON NEWLY DISCOVERED EVIDENCE BE FILED WITHIN ONE YEAR OF THE DISCOVERY OF THAT EVIDENCE.

HEREIN PETITIONER PRESENTS "NEW EVIDENCE" THAT IS CLEAR AND CONVINCING THAT PROSECUTION'S EVI-DENCE OF A "COPPER BULLET FRAGMENT" FIRED FROM SUSPECT NICHOLS 380 AUTOMATIC PISTOL HE STATES KILLED THE VICTIM WAS FALSE EVIDENCE. THE "NEW EVIDENCE OF THE AUTOPSY REPORT EXHIBIT (3) AT PROSECTIVE BY DR. VENU GOPAL SHOWS THAT THE BULLET THAT KILLED THE VICTIM WAS A "LEAD BULLET FRAGMENT" NEW EVIDENCE EXHIBIT (1)(D) SHOWS AT ITEM (8) IS A "COPPER BULLET FRAGMENT" THAT WAS FOUND AND NUMBERED STAND (3) FOUND LYING ON THE LIQUOR SHELF BEHIND THE COUNTER, WHERE THE CLERK WAS WHICH WAS FIRED BY SUSPECT NICHOLS 380 AUTOMATIC. (SEE ALSO EXHIBIT (1)(A) PAGE 2 OF 4 AND EXHIBIT (1)(B) PAGE 5 OF 7) EXHIBIT (1)(C) ITEM (12) SHOWS "TWO LEAD BULLET FRAGMENTS" FOUND AT THE SOUTHWEST CORNER OF THE STORE. WHERE THE THREE SUSPECTS WERE, THESE "LEAD BULLET FRAGMENTS" WERE FIRED BY THE CLERKS 38 REVOLVER. IT IS FACT THE CLERK OF THE STORE KILLED THE VICTIM AND NOT SUSPECT NICHOLS.

3.

GROUND (1) (B) SUPPORTING CASES CONTINUED:

HAD THIS NEW EVIDENCE NOT BEEN SUPPRESSED BY PROSECUTION NO REASONABLE JUR-
OR WOULD HAVE FOUND PETITIONER GUILTY BEYOND A REASONABLE DOUBT. PETITIONER SAYS
SUPPRESSION OF THIS NEW EVIDENCE DENIED HIM HIS 5TH AND 14TH AMENDMENT RIGHT TO DUE
PROCESS. THERE WAS NO EVIDENCE PRESENTED AT TRIAL CONNECTING HIM TO THIS CRIME AT THE
TIME OF THIS CRIME. THE SUSPECT IN THE SKI-MASK ALLEGED TO BE PETITIONER SO HIS EVIDENCE
OF HIS HAND PRINT DID NOT MATCH PETITIONERS PRINTS. (RT: 1452-1454)

EXHIBIT (1)(A)

INVESTIGATION REPORT PAGES (1) Of (4) + (2) Of (4)
BY OFFICERS J. MAY/S. DURHAM/J. RAINS

# FRESNO POLICE DEPARTMENT
## FOLLOW-UP REPORT

**1. DATE/TIME OF THIS REPORT**
091594   0450

**2. REPORT NUMBER**
94-81999

**3. TYPE OF REPORT**
☐ UNFOUNDED
☐ RECLASSIFICATION
☒ ADDITIONAL INFORMATION
☐ CLEARED
☐ RECOVERED PROPERTY
☐ MISSING PERSON LOCATED
☐ SUSPENDED
☐ REPOSSESSED VEHICLE

**4. TYPE OF ORIGINAL REP.**
PC 187

**5. VICTIM (FIRM NAME IF BUSINESS)**
Unknown

**6. LOCATION OF OCCURRENCE**
1238 N. Fresno St.

**7. DATE OF OCCURRENCE**
091594

**CLEARED ONLY**
☐ ADULT BOOKED   ☐ JUV. BOOKED   ☐ ADULT CITED   ☐ JUV. CITED   ☐ BY EXCEPTION (EXPLAIN)

## ADDITIONAL WITNESS(S)/REPORTING PERSON(S)

| NAME (LAST, FIRST, MIDDLE) | 10. RACE | 11. SEX | 12. D.O.B. | 13. ADDRESS | 14. RES.PHONE | 15. BUS.PHONE |
|---|---|---|---|---|---|---|
| | | | | | RES.PHONE | BUS.PHONE |
| | | | | ADDRESS | RES.PHONE | BUS.PHONE |
| | | | | ADDRESS | RES.PHONE | BUS.PHONE |
| | | | | ADDRESS | | |

## SUSPECT INFORMATION

| NAME (LAST, FIRST, MIDDLE) | 17. RACE | 18. SEX | 19. D.O.B. | 20. HGT. | 21. WGT. | 22. EYES | 23. HAIR COLOR | 24. HAIR STYLE | 25. FPD NUMBER |
|---|---|---|---|---|---|---|---|---|---|
| ADDRESS | 27. MISC. DESC. (CDL, SSN, ETC.) | | | | 28. DISPOSITION ☐ BOOKED ☐ CITED ☐ AT LARGE | | | 29. CHARGES | |
| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | D.O.B. | HGT. | WGT. | EYES | HAIR COLOR | HAIR STYLE | FPD NUMBER |
| ADDRESS | MISC. DESC. (CDL, SSN, ETC.) | | | | DISPOSITION ☐ BOOKED ☐ CITED ☐ AT LARGE | | | CHARGES | |
| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | D.O.B. | HGT. | WGT. | EYES | HAIR COLOR | HAIR STYLE | FPD NUMBER |
| ADDRESS | MISC. DESC. (CDL, SSN, ETC.) | | | | DISPOSITION ☐ BOOKED ☐ CITED ☐ AT LARGE | | | CHARGES | |
| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | D.O.B. | HGT. | WGT. | EYES | HAIR COLOR | HAIR STYLE | FPD NUMBER |
| ADDRESS | MISC. DESC. (CDL, SSN, ETC.) | | | | DISPOSITION ☐ BOOKED ☐ CITED ☐ AT LARGE | | | CHARGES | |

## VEHICLE INFORMATION

| TYPE OF VEHICLE | 31. V.I.N. | 32. LICENSE NO. | 33. STATE |
|---|---|---|---|
| ☐ SUSPECT ☐ VICTIM ☐ RECOVERED STOLEN ☐ OTHER (DESCRIBE) | | | |
| 34. YEAR  35. MAKE  36. MODEL  37. BODY STYLE  38. COLOR  39. OTHER DESCRIPTION | | 40. DISPOSITION (LOCATION IF STORED) | |

## NARRATIVE

091594   00040 HRS

PHOTOGRAPHIC EVIDENCE: 35 mm color photos of the scene.   35 mm B/W shoe track photos.

LATENT EVIDENCE: Two latent lift cards.

Detailed to the above location at the request of Det. Zavala.  Upon arrival, I took photos as indicated above, and collected physical evidence.  I.D. Techs J. May, and J. Rains collected physical evidence, and prepared crime scene sketches.   Two separate color number stands(yellow & orange) were used to show the locations of items of evidence discovered at the scene, as were four white letter cards(A – D).  The crime scene was the interior of the liquor store business at that address, and several of the surrounding streets, parking lots, and alleys near the business.  Yellow number stands #1 through #28 were used on the interior, and on the exterior north and east of the store.  Orange number stands #1 through #8 were

**41. REPORTING/FOLLOW-UP OFFICER(S)**
S. DURHAM/J. MAY/J. RAINS

**42. BADGE(S)**
ID207/24/20

**43. DIVISION**
IB

**44. DATE ASSIGNED**

**45. APPROVED BY**

**46. DATE/TIME**
9/15/94 0730

**47.**
PAGE 1 OF 4

FRESNO POLICE DEPARTMENT
FOLLOW-UP REPORT

| 1.DATE/TIME OF THIS REPORT | 2.DATE OCCURRED | 3. VICTIM (FIRM NAME IF BUSINESS) | 4. REPORT NUMBER |
|---|---|---|---|
| 091594    0450 | 091594 | Unknown | 94-81999 |

NARRATIVE

used on the exterior to the south, east(rear), and northeast.  Yellow stands #1 through #7, and cards A through D will show items on the store's interior.  Stand #1 will show two different revolvers, a Rossi .38 spec., ser #D435503, and a Ruger .357 ser., #30-4277, in a cigarette carton storage area beneath the cash register, on the rear side of the customer service counter near the north interior wall.  Stand #2 will show dried blood on the floor behind the service counter.  Stand #3 will show a copper bullet jacket lying on a liquor shelf on the wall behind the counter, where it had come to rest after striking several bottles on the shelf.  Stand #4 will show a blood smear on the floor, also behind the counter.  Stand #5 will show a .380 cal FC cartridge case, lying on the floor near the east end of the counter.  The cash register on the counter was closed, however, a paper  register sales tape was protruding from the machine.  The tape was photographed and collected, as was a paper sack containg $338.00 in paper currency(US), from on top of the Rossi revolver under the counter.  Stand #6 will show a second FC .380 case lying on the floor near the south interior wall, approx. 15 ft. south of the counter.  Stand #7 will show yet another case(same cal. & brand) lying on the floor near the front(west) door.  Letter cards A, B, C, & D will show five bullet holes and/or strike marks apparently made by projectiles

PROPERTY SECTION

| 1.ITEM NO. | 6.QUAN. | 7. ARTICLE | 8. BRAND | 9. MODEL NO. | 10. SERIAL NO. | 11. DESCRIPTION (COLOR, SIZE, STYLE, TYPE, FEATURES, ETC.) | 12. VALUE | 13. REC. D.OUT |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

PROPERTY TOTALS

| (1) CASH/NOTES STOLEN RECOVERED | (2) JEWELRY METALS STOLEN RECOVERED | (3) CLOTHES FURS STOLEN RECOVERED | (5) OFFICE EQUIPMENT STOLEN RECOVERED | (6) TV/RADIO CAMERA STOLEN RECOVERED | (7) FIREARMS STOLEN RECOVERED | (8) HOUSEHOLD GOODS STOLEN RECOVERED | (9) CONSUMABLE GOODS STOLEN RECOVERED | (10) LIVESTOCK STOLEN RECOVERED | (11) MISC. STOLEN RECOVERED | TOTALS STOLEN RECOVERED |
|---|---|---|---|---|---|---|---|---|---|---|
| $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ |

15. PAGE  2  OF  4

REV 8/78

EXHIBIT (1) (B) PAGE (5) of (7)
BY DETECTIVE ZAVALA

Crime:    PC 187                                  Case:  94-81999
Victim:    Buchanan, Aubry E.

In this same walkway area, near the eastern area, was a television with a VCR. This system would broadcast the pictures that the liquor store's video recorder would record. These instruments were functional upon my arrival. A video that captured the events prior to, during and after the shooting incident, was secured by Detective Stokes.

As previously stated, on the north wall of the business, north of the counter, was liquor cabinets/shelves. This particular liquor cabinet/shelf, was primarily behind the counter of the business. I noted some broken liquor bottles (that were broken as the result of the suspects shooting) atop the second shelf from the top. On the fourth shelf from the top, below the broken bottles, was a copper jacketed bullet fragment.

The bottom liquor shelf, basically below the previously described broken bottles, had numerous liquor bottles that had been disturbed.

There is a walkway that affords access from the main floor of the business to the area behind the counter of the business. This particular area is just east of the previously described counter (that had the register). On the floor, in this area, I observed an expended casing.

On the floor, near the public side of this counter, I observed the victim to be laying face up. The victim was a white male adult with gray hair, wearing a blue tee shirt, black belt, blue levis and gray athletic shoes.

The victim had a yellow flashlight in his right rear pants pocket that was on.

The victim's head was pointed in a southeasterly direction and his feet were basically pointed in a westerly direction. Underneath the victim's head area was a large pool of coagulated blood.

Near the victim's left elbow was a twenty dollar bill. Near the victim's crotch area was a ten dollar bill. Near the victim's right outer leg, was a green cigarette lighter.

One of the aisles closest to the victim had some merchandise that had been disturbed and appeared to have been disturbed as a result of the victim perhaps falling against it.

Another expended casing was on the floor, near the south side of the aisle that it closest to the business' front door.

Another expended casing was on the floor, inside the business, just south of the front door.

EXHIBIT (I) (C) PAGES (I) of (2) + (2) of (2)
BY DETECTIVE DESOTO

( ) FRESNO POLICE DEPARTMENT ( )
FOLLOW-UP REPORT

| 1. DATE/TIME OF THIS REPORT | 2. REPORT NUMBER |
|---|---|
| 9-15-94   1400 | 94-81999 |

| TYPE OF REPORT | ☐ UNFOUNDED | XXX ADDITIONAL INFORMATION | ☐ RECOVERED PROPERTY | ☐ SUSPENDED |
|---|---|---|---|---|
| | ☐ RECLASSIFICATION | ☐ CLEARED | ☐ MISSING PERSON LOCATED | ☐ REPOSSESSED VEHICLE |

| TYPE OF ORIGINAL REP. | 5. VICTIM (FIRM NAME IF BUSINESS) | 6. LOCATION OF OCCURRENCE | OCCURRENCE |
|---|---|---|---|
| PC 187 | BUCHANAN, Aubry Gene | 1288 N. FRESNO ST. | 9-14-94 |

CLEARED ONLY
☐ ADULT BOOKED   ☐ JUV. BOOKED   ☐ ADULT CITED   ☐ JUV. CITED   ☐ BY EXCEPTION (EXPLAIN)

## ADDITIONAL WITNESS(S)/REPORTING PERSON(S)

| NAME (LAST, FIRST, MIDDLE) | 10. RACE | 11. SEX | 12. D.O.B. | 13. ADDRESS | 14. RES.PHONE | 15. BUS.PHONE |
|---|---|---|---|---|---|---|
| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | D.O.B. | ADDRESS | RES.PHONE | BUS.PHONE |
| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | D.O.B. | ADDRESS | RES.PHONE | BUS.PHONE |
| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | D.O.B. | ADDRESS | RES.PHONE | BUS.PHONE |

## SUSPECT INFORMATION

| NAME (LAST, FIRST, MIDDLE) | 17. RACE | 18. SEX | 19. D.O.B. | 20. HGT. | 21. WGT. | 22. EYES | 23. HAIR COLOR | 24. HAIR STYLE | 25. FPD NUMBER |
|---|---|---|---|---|---|---|---|---|---|
| ADDRESS | 27. MISC.DESC.(CDL,SSN,ETC.) | | | 28. DISPOSITION ☐ BOOKED ☐ CITED ☐ AT LARGE | | | | 29. CHARGES | |
| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | D.O.B. | HGT. | WGT. | EYES | HAIR COLOR | HAIR STYLE | FPD NUMBER |
| ADDRESS | MISC.DESC.(CDL,SSN,ETC.) | | | DISPOSITION ☐ BOOKED ☐ CITED ☐ AT LARGE | | | | CHARGES | |
| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | D.O.B. | HGT. | WGT. | EYES | HAIR COLOR | HAIR STYLE | FPD NUMBER |
| ADDRESS | MISC.DESC.(CDL,SSN,ETC.) | | | DISPOSITION ☐ BOOKED ☐ CITED ☐ AT LARGE | | | | CHARGES | |
| NAME (LAST, FIRST, MIDDLE) | RACE | SEX | D.O.B. | HGT. | WGT. | EYES | HAIR COLOR | HAIR STYLE | FPD NUMBER |
| ADDRESS | MISC.DESC.(CDL,SSN,ETC.) | | | DISPOSITION ☐ BOOKED ☐ CITED ☐ AT LARGE | | | | CHARGES | |

## VEHICLE INFORMATION

TYPE OF VEHICLE
☐ SUSPECT ☐ VICTIM ☐ RECOVERED STOLEN ☐ OTHER (DESCRIBE)

| | 31. V.I.N. | 32. LICENSE NO. | 33. STATE |
|---|---|---|---|
| YEAR | 35. MAKE | 36. MODEL | 37. BODY STYLE | 38. COLOR | 39. OTHER DESCRIPTION | 40. DISPOSITION (LOCATION IF STORED) |

## NARRATIVE

9-15-94   1200 HRS.

PHOTOGRAPHIC EVIDENCE: 35mm color negatives of the victim's autopsy.

I detailed to the Fresno County Morgue at the request of Det. V. Zavala #419. Upon arrival I took photos of the victim's autopsy which was being performed by Dr. V. Gopal. Photos were taken of the victim prior to and during the autopsy showing the victim's injuries as pointed out by Dr. Gopal. External photos of the victim will show one bullet entry, and one bullet exit wound on the left shoulder. Located eight inches from the top of the head, and just left of the midline, on the back of the victim's neck was a bullet re-entry wound. A probe was placed through these wounds, and will show that the trajectory of the wounds was down to up, left to right, and slightly back to front. Internal photos will show a copper jacketed bullet (weight 94.3 grains) which was recovered from the right frontal lobe of the victims

| REPORTING/FOLLOW-UP OFFICER(S) | 42. BADGE(S) | 43. DIVISION | 44. DATE ASSIGNED | 45. APPROVED BY | 46. DATE/TIME |
|---|---|---|---|---|---|

FRESNO POLICE DEPARTMENT
FOLLOW-UP REPORT

| DATE/TIME OF THIS REPORT | 2. DATE OCCURRED | 3. VICTIM (FIRM NAME IF BUSINESS) | 4. REPORT NUMBER |
|---|---|---|---|
| 9-15-94   1400 | 9-14-94 | BUCHANAN, Aubry Gene | 94-81999 |

NARRATIVE

brain.  The bullet was then turned over to me by Dr. Gopal along with a sample of the victim's

blood.  Prior to leaving the morgue I rolled the victim's left thumb, which compared positive

to the known prints on file in the FPD I. Bureau of BUCHANAN, Aubry Gene, FPD# 94976

The victim's clothing was then turned over to me by Dr. Gopal.  Upon returning to the

I. Bureau I booked the victim's blood into the property section refrigerator.  The remaining

items were booked into the property section lockers. All photographic negatives and

finger print evidence will be on file in the I. Bureau.

PROPERTY SECTION

| ITEM NO. | 6. QUAN. | 7. ARTICLE | 8. BRAND | 9. MODEL NO. | 10. SERIAL NO. | 11. DESCRIPTION (COLOR, SIZE, STYLE, TYPE, FEATURES, ETC.) | 12. VALUE | 13. R: REC. O: OUT |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

PROPERTY TOTALS

| (1) NOTES EN | JEWELRY METALS STOLEN | [2] CLOTHES FURS STOLEN | [3] OFFICE EQUIPMENT STOLEN | [5] TV/RADIO CAMERA STOLEN | [6] FIREARMS STOLEN | [7] HOUSEHOLD GOODS STOLEN | [9] CONSUMABLE GOODS STOLEN | LIVESTOCK STOLEN | [10] MISC. STOLEN | (11) TOTALS STOLEN |
|---|---|---|---|---|---|---|---|---|---|---|

EXHIBIT (1) (D) REPORT Of THE
FRESNO POLICE DEPARTMENT PROPERTY/
EVIDENCE REPORT:

**TAG** № 106598

ATTACHMENT "A"
**FRESNO POLICE DEPARTMENT**
**PROPERTY/EVIDENCE REPORT**

| 1. Date Booked | | | | | | 2. Report No. |
|---|---|---|---|---|---|---|
| 9.15.94 | | | | | | 94-81999 |

| 3. Type of Orig. Repi. | 4. Location of Occurrence | | 5. Area/Sector |
|---|---|---|---|
| P.C. 187 | 1288 N. Fresno St. | | |

| 6. Victim's Name    LAST    FIRST    MIDDLE | 7. Victim's Address | City/Zip | 8. Ph # (Day) |
|---|---|---|---|
| BUCHANAN, Aubrey Eugene | | | |

| 9. RP's Name (if victim unknown)    LAST    FIRST    MIDDLE | 10. RP's Address | City/Zip | 11. Ph # (Day) |
|---|---|---|---|
| | | | |

| 12. Persons Arrested/Suspect    LAST    FIRST    MIDDLE | 13. Arrestee/Suspect Address | City/Zip | Cited | Juvenile |
|---|---|---|---|---|
| | | | | |

**PROPERTY BOOKED**

14. Type of Property  ☒ Evidence  ☐ Recovered  ☐ Found  ☐ Safekeeping  ☐ Search Warrant No. _____

| 15. Item No. | 16. Quantity | 17. Article | 18. Brand | 19. Model # | 20. Serial # | 21. Descrip. (Color, Size, Style, Type, Features, Caliber, etc.) | 22. Value | 23. |
|---|---|---|---|---|---|---|---|---|
| 8. | 1 | Copper Jacket Fragment | | | | Copper jacket fragment (wt. approx. 7gr.) from number stand #3. | | |
| 9. | 1 | Cartridge Casing | FC .380 auto | | | (1) expended FC .380 auto cart. casing from number stand #5. | | |
| 10. | 1 | Cartridge Casing | FC .380 auto | | | (1) expended FC .380 auto cart. casing from number stand #6. | | |
| 11. | 1 | Cartridge Casing | FC .380 auto | | | (1) expended FC .380 auto cart. casing from number stand #7. | | |
| 12. | 2 | Spent lead bullets | | | | (2) spent lead bullets (wt. approx. 150 gr. each) from S/W corner of store. | | |
| 13. | 1 | Cash Register Receipt | | | | Taken from cash register: last sale of 1 beer @ 21:03 hrs: $1.09 total | | |
| 14. | 1 | Cash Register Tape | | | | Taken from cash register showing cash in drawer at 20:59 hrs: $496.80. | | |
| 15. | 1 | U.S. CURRENCY | | | | (1) $10.00 bill U.S. currency from floor near victim | | |

EXHIBIT (2) AT PROJECTILE BY
DOCTOR VENU GOPAL
"AUTOPSY REPORT"

Fresno, California, September 14, 1994, 2117    )
                                                  (

IN THE MATTER OF INVESTIGATION HELD    )
                                                  (

UPON THE BODY OF AUBREY E. BUCHANAN    )
                                                  (

DECEASED.......................................)

ooOooo

     I received a call at 0200, on 9-15-94, from the Fresno Police Department, reporting a deceased person at 1288 N. Fresno Street. I arrived at 0300, and the decedent was identified through personal documents (and subsequent fingerprint comparison) as Aubrey Eugene Buchanan, 50, a White male, who was found dead at 2117, 9-14-94, by paramedics, as a result of injuries sustained in an apparent homicide.

     Fresno Police Department investigators stated that the decedent was a customer in a liquor store, when two black males entered and attempted to rob it. Shots were fired by the suspects, and the store owner, and during the shooting, the decedent was apparently caught in the crossfire. The suspect weapon was a AMT .380 auto pistol (DA30176), and the store owner was using a Rossi Interarms, .38spl caliber revolver, (435503). The store owner and both suspects were wounded during the exchange of gunfire. The suspects were subsequently apprehended by police.

     The decedent was found supine on the floor in a large pool of blood. There was an apparent gunshot wound to the left shoulder and an entrance wound to the left neck. Video surveillance equipment in the store showed the decedent standing at the counter when he suddenly collapsed following gunfire from the suspects.

     The time and location of the incident was 2111, 9-14-94, at the S & L Liquor Store, 1288 N. Fresno Street, Fresno; an apparent homicide, which occurred when the decedent was shot during the attempted robbery of the store. See Fresno Police Department report 94-81999.

     The decedent was taken to the Fresno County Morgue, where Dr. Gopal will autopsy to determine the cause of death. The decedent will be taken to Nova Cremation at the request of the family.

ROBERT HENSEL, DEPUTY CORONER

BUCHANAN. Aubry Eugene                                          94-09-036

## Fresno County Coroner · Autopsy Report

Case:    94-09-036
Name:    BUCHANAN, Aubry Eugene
DOD:     09/15/94
Date Performed:    09/15/94; 12:00 noon
Performed At:    Fresno County Morgue
Performed By:    Venu Gopal, M.D.
Present:  Detective Vincent Zavala; ID Tech Dave Desoto

## PERSONAL EFFECTS:

The upper body is dressed in a blue T-shirt that had a baseball and a "Snoopy" in front and the wordings "COMPLETE CONTROL." It has two perforations in the left shoulder region which correspond with the gunshot wounds to be described presently. The back of the shirt is drenched in blood. The lower half of the body is dressed in blue jeans and gray sneakers.

## EXTERNAL EXAMINATION:

The decedent is a well developed, well nourished, White male, whose appearance is slightly older than with the stated age of 50 years. The body measures 71" in length and weighs 162 pounds. Rigor mortis is present all over; livor mortis is over the back and the body is cold.

The head hair is predominantly gray, measuring up to 4" in length. The face sports a trimmed gray mustache. The irides are brown. There are no petechiae of the palpebral or bulbar conjunctiva. The upper jaw is edentulous. The lower jaw has natural teeth partially present. The lingual surfaces of the lips are unremarkable. The nose and ears are unremarkable. The face, neck, chest, abdomen, back and extremities are unremarkable, except for the injuries to be described presently. The external genitalia are those of a normal adult male. The penis is circumcised.

SCARS & TATTOOS: There is a tattoo of a head with a scar and a car over the left forearm. There is the wording "GENE" over the outer aspect of the right arm.

## INJURIES · EXTERNAL AND INTERNAL:

A. GUNSHOT WOUND TO BACK OF LEFT SHOULDER:

ENTRANCE WOUND: There is an entrance gunshot wound to the back of the left shoulder. The wound is centered 13" from the top of the head and 8 1/2" to

Page 1

BUCHANAN. Aubry Eugene                                      94-09-036

COURSE AND DIRECTION: The direction of the wound path is from left to right and very slightly upward, in the left shoulder. After reentering the back of the neck, the direction of the wound path is from back to front and slightly upward.

The injuries and findings above, having been mentioned once, will not be repeated.

## INTERNAL EXAMINATION:

BODY CAVITIES: The thoracic and abdominal organs are in normal anatomic relations. There are no adhesions or effusions in any of the body cavities. There are a few surgical sutures in the anterior abdominal wall as well as in the deep fascia

HEAD: See recent injuries above. The scalp and skull are unremarkable, except for the injuries described earlier. The dura and dural sinuses are intact. There is no epidural, subdural or subarachnoid hemorrhage. The brain weighs 1430 gm. The gyri and sulci are unremarkable. There is no uncal or tonsillar herniation. The cranial nerves are unremarkable. The cerebral blood vessels show mild atherosclerosis.

Sections of the cerebral hemispheres show no focus of hemorrhage, softening or induration, within the cortex, subcortical white matter or deep parenchyma of either hemisphere, except for the injuries described earlier. The basal ganglia and thalami are unremarkable. The mid brain, pons, cerebellum and medulla oblongata are unremarkable, except for the injuries described earlier. The ventricles are unremarkable.

NECK: The soft tissues of the neck are unremarkable. The larynx, trachea and laryngeal mucosa are unremarkable. The hyoid bone and thyroid cartilage are intact. There is no extravasated blood in the prevertebral fascia. The cervical vertebral column is unremarkable.

CARDIOVASCULAR SYSTEM: The heart weighs 390 gm. The pericardium, epicardium and endocardium are smooth and glistening. There are no pericardial petechiae or subendocardial hemorrhages. The heart valves and chordae tendineae show no deformity or malformation. The coronary arteries arise in their normal positions, have patent ostia and a right predominant pattern of distribution. They show no atherosclerosis or other abnormality. The myocardium is uniform, firm, dark reddish brown, without focal abnormality.

The aorta and its major branches show minimal atherosclerosis. The great veins are unremarkable.

BUCHANAN, Aubry Eugene                                              94-09-036

## OPINION AS TO THE CAUSE OF DEATH:

Penetration of the brain due to gunshot wound to the left shoulder and head.

## MANNER OF DEATH:

Homicide.


_(signature)_

**VENU GOPAL, M.D.**
Senior Forensic Pathologist

VG/mmf
d:  09/15/94
t:   10/04/94

---

Page 5

# EXHIBIT (3)

## PROSECUTIONS EXHIBITS DURING TRIAL:

EXHIBITS

|  |  | ID | EVD |
|---|---|---|---|
| PEOPLE'S: |  |  |  |
| 1 | Diagram |  | 566 |
| 1-A | Diagram key |  | 767 |
| 2 | Diagram |  | 566 |
| 3 | Photo | 177 | 171 |
| 4 | Diagram | 202 |  |
| 5 | Police report |  | 218 |
| 6 | Videotape |  | 791 |
| 6-A | Edited videotape |  | 818 |
| 6-B | Still photo from video |  | 818 |
| 6-C | Still photo from video |  | 818 |
| 6-D | Still photo from video |  | 818 |
| 6-E | Still photo from video |  | 385 |
| 7 | Nichol's blood sample |  | 389 |
| 8-A | Nichols shorts |  | 389 |
| 8-B | Nichols shirt |  | 389 |
| 8-C | Nichols shoes |  | 389 |
| 8-D | Nichols baseball cap |  | 389 |
| 8-E | Nichols latex gloves |  | 537 |
| 9 | Surinder's shirt |  | 541 |
| 10 | Elliott's blood sample |  | 546 |
| 11-A | Elliott's shirt |  | 548 |
| 11-B | Elliott's shorts |  | 549 |
| 11-C | Elliott's socks |  | 978 |
| 12-A | Casette tape |  | 985 |
| 13-A to U | Photos of vehicle |  | 1018 |
| 14 | Simmons blood vials |  | 566 |
| 15-A to S | Crime scene photos |  | 590 |
| 15-T | Crime scene photo |  | 767 |
| 15-U,V,W | Crime scene photos |  | 566 |
| 16-A to R | Crime scene photos |  | 764 |
| 16-S, T | Crime scene photos |  | 566 |
| 17-A to M | Crime scene photos |  | 575 |
| 18-A | .357 revolver |  | 577 |
| 18-A-1 | Casings |  | 575 |
| 18-B | .38 revolver |  | 578 |
| 19 | Bullet jacket |  | 587 |
| 20-A | .380 cartridge casing |  | 587 |
| 20-B | .380 cartirdge casing |  | 588 |
| 20-C | .380 cartridge casing |  | 597 |
| 22 | Bottle of beer |  | 617 |
| 23-A | Blood swabs |  | 617 |
| 23-B | Blood swabs |  | 617 |
| 23-C | Blood swabs |  | 601 |
| 24-A | Baseball cap |  | 604 |
| 24-B | Baseball cap |  | 604 |
| 24-C | Bandana |  | 606 |
| 25 | .380 pistol |  | 619 |
| 26-A to D | Blood swabs |  | 621 |
| 27-A to I | Blood swabs |  | 1474 |
| 28 | Blood and control swabs |  | 1466 |
| 29-A | Fabric |  | 1466 |
| 29-B | Fabric |  |  |

| | PEOPLE'S EXHIBITS CONTINUED: | ID | EVD |
|---|---|---|---|
| 30 | Latex gloves | | 1469 |
| 31 | Latex gloves | | 1470 |
| 31-A | Blood and control swabs | 269 | 1471 |
| 32 | Ski mask | | 1468 |
| 33 | Bandana | | 1467 |
| 34 | Buchanan's shirt | | 777 |
| 35 | Bullet from victim's brain | | 777 |
| 36 | Table of blood results | 314 | 921 |
| 37 | Drawing by Miranda | | 349 |
| 38 | Paper bag | | 623 |
| 40 | Elliott VMC records | | 435 |
| 41 | Surinder VMC records | | 443 |
| 44-A & B | Photos of Surinder | | 780 |
| 45 | Martin St. Agnes records (partial) | | 1206 |
| 46 | Printout event 042 | | 1331 |
| 47 | Printout event 508 | | 1331 |
| 48 | 9-1-1 tape | 1359 | 1458 |
| 49 | FPD report #94-81999 | | 1428 |
| 50 | Medical records | | 1457 |
| 51 | 9-1-1 transcript | | 1849 |
| 52 | Known fingerprints of Simmons | | 1849 |
| 52-A | Rolled fingerprints of Simmons | | 1854 |
| 53 | Prior | | 1854 |
| 54 | Judgment & Commitment order | | |

| | DEFENSE: | | |
|---|---|---|---|
| A | Martin St. Agnes records (partial) | 1136 | 1206 |
| B | Martin St. Agnes records (complete) | 1136 | 1215 |

-oOo-

EXHIBIT (3)(A)

REPORTERS TRANSCRIPT PAGES (777-778)

777

1   MR. COOPER:   For the record, move into evidence

2   People's 34, Your Honor.

3       THE COURT:   Yes.  No. 34 is in.  Buchanan shirt, is

4   that a proper title for that exhibit?

5       MR. COOPER:   Sure.

6           (Whereupon, People's Exhibit No. 34 was

7           received in evidence.)

8       MR. COOPER:   People's 35.

9   Q    Mr. DeSoto, is that something you brought with you

10  today?

11  A    Yes.

12  Q    And what do you recognize this as being?

13  A    That's a copper jacketed bullet that was removed

14  from the victim's brain at autopsy by Dr. Gopal.

15  Q    Did you then take possession of it?

16  A    Yes.

17  Q    Did you subsequently check it into police evidence?

18  A    Yes.

19  Q    Did you do the same with the shirt as well?

20  A    Yes.

21      MR. COOPER:   Move People's 35, Your Honor.

22      THE COURT:   Yes, No. 35 is in.

23          (Whereupon, People's Exhibit No. 35 was

24          received in evidence.)

25      MR. COOPER:   Q    You say copper jacketed.  Is the

26  copper jacket apparent on this?

778

1    A    Yes.

2    MR. COOPER:    Your Honor, People's -- publish People's

3  35 to the --

4    THE COURT:    Yes.  What was the last question?

5    MR. COOPER:    I was just stating I'll exhibit it to the

6  jury.

7    THE COURT:    Yes.  Certainly.  If you want to publish

8  that, you may.

9    MR. COOPER:    Q    Mr. DeSoto, the object you're

10  referring to appears here in the clear view window?

11    A    Yes.

12    (Whereupon, Mr. Cooper published to the

13    jury.)

14    MR. COOPER:    Q    Mr. DeSoto, in your experience as an

15  I. Bureau tech, have you had occasion to see what appears to

16  be blood dried on items of clothing?

17    A    Yes.

18    Q    And do you see anything that appears like that on

19  this shirt?

20    A    Yes.

21    Q    And would that be these dark crusty areas

22  (indicating)?

23    A    Yes.

24    Q    And I have the shirt arranged, although it's cut

25  open up the middle, it's arranged generally with the front

26  left shoulder showing; is that correct?

EXHIBIT (3)(B)
REPORTERS TRANSCRIPT PAGES (37,38)

1  this duplicate.

2          (whereupon the video was played.)

3      THE WITNESS: This is way past it.  He's already been

4  shot there.

5          That was the victim that just entered.

6      MR. CRIEGO: Is there something more we need to see in

7  this particular tape?

8          (whereupon the video was completed.)

9      MR. COOPER:    Q    Detective Stokes at any time

10  during your investigation did you speak with a man named

11  Sharma Surinder?

12      A.  No.

13      Q.  You mentioned a person named Buchanan?

14      A.  Yes.

15      Q.  Is that a person that you knew before the night

16  that you went to this liquor store?

17      A.  Yes.

18      Q.  And when you went to the liquor store location,

19  for the record, was Mr. Buchanan there?

20      A.  Yes.

21      Q.  Where was he?

22      A.  Just inside the door. He was the deceased on the

23  floor.

24      Q.  The person who fell to the floor and remained

25  lying on the floor on the video that we just reviewed?

26      A.  Yes.

1    Q.   Have you had occasion to review a report of a

2  Detective Zavala regarding the autopsy performed on Mr.

3  Buchanan?

4    A.   Yes.

5    Q.   And regarding Detective Zavala's report of the

6  autopsy, does he mention seeing a bullet removed from Mr.

7  Buchanan?

8    A.   Yes.

9    Q.   Do you recollect if he mentioned what location?

10   MR. CRIEGO: Objection.  Hearsay.

11   THE COURT: Overruled.

12   THE WITNESS: The bullet was removed from the right

13  side of the brain toward the front of the skull.

14   Q.   Did Detective Zavala report anything regarding

15  the appearance?  In other words, nominal caliber of the

16  projectile or bullet?

17   A.   I don't recall if he wrote it in his report.  I

18  know I looked at the bullet myself.  He told me it was a

19  copper-jacketed .380.  That's what it looked like to me,

20  both by its weight and its appearance.

21   Q.   Have you had occasion to review or rather to read

22  a report of a Detective Munoz regarding observations she

23  made in the area outside of the liquor store?

24   A.   Yes, I have.

25   Q.   Did you, yourself, have occasion to make

26  observations in the area outside of the liquor store?